UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: ROBERT BEYERLEIN and
BELINDA BEYERLEIN,

No. 13-06-11278 MA

Debtors.

# MEMORANDUM OPINION

THIS MATTER is before the Court on confirmation of Debtors' chapter 13 plan. The Chapter 13 Trustee objected to confirmation of Debtors' chapter 13 plan, asserting, among other things[1], that 11 U.S.C. § 1325(b)(3), enacted as part of the Bankruptcy Abuse and Consumer Protection Act of 2005 ("BAPCPA")[2], precludes the Debtors from deducting charitable contributions when calculating their disposable income for purposes of determining the amounts necessary to fund their chapter 13 plan. The Chapter 13 Trustee filed a memorandum brief in support of her objection. (*See* Docket # 19). The United States Trustee disagreed with the position taken by the Chapter 13 Trustee, and filed a response to the objection and a reply brief to the memorandum brief filed by the Chapter 13 Trustee. (*See* Docket # 17 and Docket #20). The Debtors did not file a response to the Chapter 13 Trustee's objection, but at the final hearing on confirmation, Debtors argued that § 1325(b)(3) is unconstitutional. The Court permitted the Chapter 13 Trustee to file a brief responding to the Debtors' constitutionality argument, and took the matter under advisement. After consideration of the language of the statute and the

---

[1] The Debtors and the Chapter 13 Trustee have resolved all other issues relating to confirmation.

[2] This bankruptcy proceeding was filed after the effective date of BAPCPA. All future statutory references are to Title 11 of the United States Code, as amended by BAPCPA, unless otherwise stated.

1

arguments of counsel, the Court agrees with the Chapter 13 Trustee and finds that § 1325(b)(3) restricts the reasonable and necessary expenses for above-median income debtors and does not permit charitable contributions as a reasonable and necessary expense when calculating disposable income. The Court further finds that the application of § 1325(b)(3) to the Debtors does not interfere with the Debtors' First Amendment constitutional rights and is not unconstitutional.

## FACTS

The following facts necessary to the disposition of this matter are not in dispute and are entered by the Court in accordance with Rule 7052, Fed.R.Bankr.P.. Debtors filed a voluntary petition under Chapter 13 of the Bankruptcy Code on July 27, 2006 together with their statements and schedules. Debtors' Schedule J reflects a monthly charitable contribution in the amount of $365.00. Debtors' Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income for Use in Chapter 13 (Form B22C) likewise reflects a monthly charitable contribution in the amount of $365.00. (*See* Form B22C, line 45). The Debtors' monthly disposable income as calculated on Form B22C is $223.00.[3] Debtors' plan proposes monthly payments of $250.00 for a period of sixty months. The Debtors' annualized current monthly income as calculated and reported on Form B22C is $93,516.00, which exceeds the median income for a family in New Mexico the size of Debtors' family.[4] (*See*

---

[3]Debtors' Schedule J reflects net monthly income of $838.00. Whether the net monthly income reflected in Schedule J or the disposable income figure calculated based on § 1325(b)(3) on form B22C determines the amount of the required monthly plan payment is not an issue raised by the Chapter 13 Trustee in this proceeding.

[4]The median income for a family of three in New Mexico as reported on Debtors' Form B22C, line 16. is $42,824.00.

2

Form B22C, lines 21-23). The Debtors' charitable contribution is to a qualified religious organization.

## DISCUSSION

The requirements for confirmation of a chapter 13 plan are contained in § 1325. Once the trustee or a creditor holding an allowed unsecured claim objects to confirmation of a debtor's chapter 13 plan, the plan must provide that "all of the debtor's disposable income to be received during the applicable commitment period[5] . . . will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). "Disposable income" is defined in § 1325(b)(2), and provides, in relevant part:

> For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended --
>     (A)(I) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
>     (ii) for charitable contributions (that meet the definition of "charitable contributions" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made[.]

11 U.S.C. § 1325(b)(2)(A).

Prior to the enactment of BAPCPA, the language in § 1325(b)(2) excluding charitable contributions from disposable income was essentially the same as the language now contained in § 1325(b)(2)(A)(ii). However, BAPCPA added a new subsection, § 1325(b)(3), which provides, in relevant part:

---

[5]"Applicable commitment period" is determined under § 1325(b)(4)(A). If the annualized current combined monthly income of the debtor and the debtor's spouse is equal to or greater than the median family income of a family of the same size, the "applicable commitment period" is not less than five years, unless the plan provides for payment in full of all allowed unsecured claims over a shorter time period. 11 U.S.C. § 1325(b)(4)(A) and (B).

3

(3) Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has a current monthly income, when multiplied by 12, greater than --

> . . . .
> (B) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals[.]

11 U.S.C. § 1325(b)(3)(B).

The subsections of § 707(b) that § 1325(b)(3) refers to are §707(b)(2)(A) and (B), which limit the debtor's reasonable and necessary expenses to the categories and amounts specified therein, including those expenses contained in the National and Local Standards established by the Internal Revenue Service, and to the debtor's actual expenses in the categories specified by the Internal Revenue Service as Other Necessary Expenses. 11 U.S.C. § 707(b)(2)(A). Charitable contributions are not included in the categories of expenses enumerated in § 707(b)(2)(A) or (B).[6] Nor does § 707(b)(2)(A) or (B) incorporate the charitable contribution provisions contained in § 1325(b)(2)(A). *In re Tranmer,* ___ B.R. ___ 2006 WL 3366458 at *16 (Bankr.D.Mont. 2006).

The Chapter 13 Trustee argues that the plain language of § 1325(b)(3) and § 707(b)(2) prohibit above-median debtors from deducting charitable contributions when determining disposable income. This Court agrees and follows *In re Diagostino,* 347 B.R. 116 (Bankr.N.D.N.Y. 2006) and *Tranmer* which reach the same conclusion: " the failure to include a

---

[6]One exception, not applicable here, falls under the category of "Other Necessary Expenses" as established by the Internal Revenue Service. Section 5.15.1.10 of the IRS Financial Analysis Handbook identifies charitable contributions as an allowed expense under the category of "Other Necessary Expenses" when such contributions are a condition of employment. *See also, In re Tranmer,* __ B.R. ___ 2006 WL 3366458 at *16 (Bankr.D.Mont. 2006) (discussing 5.15.1.10, and finding it inapplicable to the debtor's $15.00 charitable contribution to his child's school).

4

provision for charitable contributions in § 1325(b)(3) 'effectively closes the door for debtors who are above the median income from deducting charitable contributions as an expense unless they can establish the contributions fall under the IRS guidelines.'" *Tranmer,* WL 3366458 at *16 (quoting *Diagostino,* 347 B.R. at 119-20).[7]

    The United States Trustee raises the following arguments in opposition to the Chapter 13 Trustee's position: 1) because the Religious Liberty and Charitable Donation Protection Act of 1998 (RLDCPA), which was incorporated into § 1325(b)(2) prior to the enactment of BAPCPA, expresses Congress' clear intent that tithing of up to 15% of a debtor's gross income constitutes a presumptively reasonable and necessary expense, BAPCPA should not be construed as an implicit repeal of the RLDCPA; and 2) the statutory scheme must be considered as a whole, so that the charitable contributions authorized by § 1325(b)(2) and referenced in § 707(b) apply to all debtors regardless of income.  The United States Trustee raised these same arguments in Keven Saul Meyer and Elizabeth Pauline Meyer, Case No. 13-06-11376 SA, a New Mexico case involving an identical set of facts.  In a thorough and well-reasoned opinion, Judge Starzynski rejected the United States Trustee's arguments, finding that the "natural reading"[8] of § 1325(b)(3) and § 707(b)(2)(A) results in the conclusion that above-median income debtors are

---

    [7]Because the Court reaches its conclusion based on the plain meaning of the statutory language, the Court need not consider legislative history in an effort to interpret the statute.  *See Lamie v. United States Trustee,* 540 U.S. 526, 533-536, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (noting that even if the statute is awkward or ungrammatical, if the meaning of the language is plain, and the results not absurd, the court should enforce the statute according to its terms and avoid the pitfalls of consulting legislative history to determine the meaning of the statute)

    [8]citing *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) and *Lamie,* 540 U.S. at 543.

5

not entitled to claim charitable contributions as necessary expenses when calculating disposable income. *In re Meyer,* ___ B.R.___, 2006 WL 3505379 *4 (Bankr.D.N.M. 2006). Judge Starzynski explained further that this reading of the statute does not constitute a ruling that Congress' enactment of § 1325(b)(3) repealed RLCDPA, but merely limits its application to a well defined circumstance, i.e., to debtors whose income falls below the median. *Id.* at *6. This Court adopts the reasoning contained in the Memorandum Opinion and Order Not Confirming Debtors' Chapter 13 Plan entered in the Kevin Meyer and Elizabeth Meyer bankruptcy proceeding, Case No. 13-16-11376 SA.

The result of this reading of the statute is that a disparity now exists between above-median income debtors, who are precluded from deducting charitable donations from their disposable income computation, and below-median income debtors who can. Debtors contend that this disparity renders § 1325(b)(3) unconstitutional because it interferes with the Debtors' free exercise of religion under the First Amendment of the Constitution. The First Amendment provides:

> Congress shall make no law respecting an establishment of religion, or
> prohibiting the free exercise thereof . . . .
> U.S. Const. amend. I

The Free Exercise Clause of the First Amendment protects "'the right to believe and profess whatever religious doctrine one desires.'" *In re Newman,* 203 B.R. 468, 474 (D.Kan. 1996) (quoting *Employment Div., Dept. Human Res. of Oregon v. Smith,* 494 U.S. 872, 877, 110 S.Ct. 1595, 1599, 109 L.Ed.2d 876 (1990)). To comply with the protections afforded by the First Amendment, "the law may not require a person to accept any particular creed or form of worship, nor may it restrict a person's right to exercise a chosen form of religion." *In re Roman*

6

*Catholic Archbishop of Portland in Or.,* 335 B.R. 842, 851 (Bankr.D.Or. 2005). "'Thus, the Amendment embraces two concepts, – freedom to believe and freedom to act.'" *Id.* (quoting *Cantwell v. State of Connecticut,* 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940)).

Yet, "the right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes)." *Employment Div., Dept. of Human Res. of Or. v. Smith,* 494 U.S. 872, 879, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (internal quotation omitted). Thus when the prohibition of the free exercise of religion is not the object of the law but "merely the incidental effect of a generally applicable and otherwise valid provision," the First Amendment has not been violated. *Smith,* 494 U.S. at 878. For this reason, "a law that is both neutral and generally applicable need only be rationally related to a legitimate governmental interest to survive a constitutional challenge." *Grace United Methodist Church v. City of Cheyenne,* 451 F.3d 643, 649 (10th Cir. 2006) (citing *United States v. Hardman,* 297 F.3d 1116, 1126 (10th Cir. 2002)). Laws that are not neutral and generally applicable in that they target religious beliefs or practices are subject to strict scrutiny; such laws remain valid only when they are narrowly tailored to further a compelling governmental interest. *Id.* at 649 (noting that "if a law that burdens a religious practice is not neutral or generally applicable, it is subject to strict scrutiny, and the burden on religious conduct violates the Free Exercise Clause unless it is narrowly tailored to advance a compelling governmental interest.") (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 546, 113 S.Ct. 2217, 124 L.Ed.2d 472 (1993)); *Newman,* 203 B.R. at 474 (same).

"A law is neutral so long as its object is something other than the infringement or

7

restriction of religious practices." *Id.* at 649-50 (citing *Church of the Lukumi*, 508 U.S. at 533). The Court finds that § 1325(b)(3), though it targets above-income debtors, is both neutral and generally applicable. It is neutral in that its object is not religious beliefs or practices; rather, the object of the statute is to require above-median income debtors to repay a greater portion of their debts to unsecured creditors. The statute restricts the types and amounts of expenses above-median income debtors can deduct in computing the disposable income amount that must be contributed to the plan. It does not target or prohibit religious practices. The statute is generally applicable in that it excludes from the disposable income calculation the deduction of any charitable donations, whether they are to religious institutions as part of a debtor's practice of religion or to any other non-profit charitable organization. *Cf. Newman,* 203 B.R. at 475 (finding that the fraudulent transfer provision is a valid and neutral law of general application, since it would apply equally to transfers of property to religious institutions and to transfers to non-religious charities when the debtor receives nothing of economic value in return); *In re Bloch,* 207 B.R. 944, 949-50 (D.Colo. 1997) (also finding § 548(a) "to be a valid and neutral law which applies regardless of whether or not the debtor acted with religious motivation, or made the transfer to a religious institution.")(citation omitted). The statute furthers a legitimate governmental interest in that it continues to balance the debtors' need to pay for their reasonable and necessary expenses against the creditors' interest in collecting valid claims. The Court, therefore, finds that § 1325(b)(3) does not violate the Debtors' First Amendment rights because the statute is both neutral and generally applicable and is rationally related to a legitimate governmental interest.

The Chapter 13 Trustee asserts that the statute does not prevent the Debtors from

8

Case 06-11278-m7    Doc 26    Filed 12/19/06    Entered 12/19/06 13:22:04 Page 8 of 14

continuing to tithe as part of their religious practice because the restriction applies only to the computation of disposable income under the means test, and not to the Debtors' actual contributions. The Chapter 13 Trustee argues further that the Debtors can continue to tithe if they choose to make adjustments elsewhere in their budget. Thus, because § 1325(b)(3) does not itself prohibit tithing, the effect of § 1325(b)(3) on the Debtors' free exercise of their religious practice is merely incidental. However, even though § 1325(b)(3) strictly applies only to the disposable income computation, the practical effect of its application is to restrict the Debtors' ability to tithe. Thus § 1325(b)(3) burdens the free exercise of Debtor's religion to some degree.

If a statute *substantially* burdens the free exercise of religion, it violates the Religious Freedom Restoration Act ("RFRA") unless it is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C. § 2000bb.[9] RFRA was enacted by Congress in an attempt to restore the "compelling state interest" test articulated by the Supreme Court in *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) and *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972) prior to its decision in *Smith. See* 42 U.S.C.

---

[9]RFRA provides, in relevant part:
    (a) In general
        Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b) of this section.
    (b) Exception
        Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person--
            (1) is in furtherance of a compelling governmental interest; and
            (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb-1.

9

§ 2000bb; *In re Hodge,* 220 B.R. 386, 396 (D.Idaho 1998) (discussing enactment of RFRA). The Supreme Court determined RFRA to be unconstitutional as applied to states. *See City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). Since then, courts have continued to apply RFRA to federal statutes. *See, e.g., O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft,* 342 F.3d 1170 (10th Cir. 2003) (RFRA as applied to Controlled Substances Act); *United States v. Hardman,* 297 F.3d 1116 (10th Cir. 2002) (RFRA as applied to Bald Eagle Protection Act). *See also, Hodge,* 220 B.R. at 398 (holding that RFRA " is a proper exercise of Congress's power under the Bankruptcy Clause."). Debtors have not raised RFRA as part of their argument that § 1325(b)(3) violates their constitutional rights, nor have they directly argued that the statute is unconstitutional absent a finding of a compelling governmental interest. Nevertheless, even under the more stringent standards of the "compelling interest" test, the Court finds that § 1325(b)(3) does not violate the Free Exercise Clause of the First Amendment.

Debtors bear the burden of showing that the statute at issue imposes a substantial burden on their free exercise of religion.[10] *Bloch,* 207 B.R. at 951 (citing *Werner v. McCotter,* 49 F.3d 1476, 1480 n.2 (10th Cir. 1995)). "'To exceed the 'substantial burden' threshold, governmental regulation must significantly inhibit or constrain' an individual's 'ability to express adherence to his or her faith.'" *Id.* quoting *Werner v. McCotter,* 49 F.3d at 1480. Stated another way, the statute imposes a substantial burden when it "prevent[s] him or her from engaging in conduct or having a religious experience which the faith mandates . . . . the burden must be substantial and

---

[10]The final hearing on confirmation consisted solely of legal argument; no evidence, other than the record of this proceeding was offered by any party. For purposes of considering Debtors' constitutionality argument, the Court will presume as uncontested that tithing is an important part of the Debtors' practice of their religion.

10

an interference with a tenet or belief that is central to religious doctrine." *Bryant v. Gomez,* 46 F.3d 948, 949 (9th Cir. 1995)(quoting *Graham v. C.I.R.,* 822 F.2d 844, 850-51 (9th Cir. 1987)(internal citations omitted), *aff'd sub nom. Hernandez v. Commissioner,* 490 U.S. 680, 699, 109 S.Ct. 2136, 2148, 104 L.Ed.2d 766 (1988)). In this instance, the application of § 1325(b)(3) does not prohibit Debtors from practicing their faith, nor does it prohibit tithing per se. However, it arguably forces the Debtors to choose between filing for bankruptcy and tithing to their church. *See Hodge,* 220 B.R. at 390 (noting that "[a]n adherent's free exercise of his or her religion is substantially burdened by a statute that . . . forces the adherent to choose between following a particular religious practice or accepting the statute's benefits.") (citing *Sherbert,* 374 U.S. at 404 (remaining citation omitted)).

On the other hand, there is no constitutional right to the protection of the bankruptcy laws. *See United States v. Kras,* 409 U.S. 434, 446-447, 93 S.Ct. 631, 638-39, 34 L.Ed.2d 626 (1973) (finding that bankruptcy protection is not a fundamental constitutional right; accordingly, there is no constitutional right to obtain a discharge through bankruptcy); *In re Belcher,* 287 B.R. 839, 848 (Bankr.N.D.Ga. 2001) (citing cases). Nor is the giving of charitable contributions "'a right to be protected by the free exercise clause of the First Amendment.'" *In re Griffieth,* 209 B.R. 823, 828 (Bankr.N.D.N.Y. 1996) (quoting *In re Faulkner,* 165 B.R. 644, 647 (Bankr.W.D.Mo. 1994) citing *Smith* and *Church of Lukumi*); *In re Colish,* 289 B.R. 523, 536 (Bankr.E.D.N.Y. 2002) (noting that there is no constitutional right to make charitable contributions under the First Amendment). By choosing to file for bankruptcy, Debtors have subjected themselves to the provisions of the Bankruptcy Code. Section § 1325(b)(3) interferes with the Debtors' ability to tithe, but only because it prohibits the inclusion of charitable

11

contributions from the calculation of Debtors' disposable income.  It does not prohibit tithing per se; and, therefore, does not constitute a substantial burden on the Debtors' free exercise of their religion.

Even if the Court were to find that § 1325(b)(3) imposes a substantial burden on the Debtors' religious practices, the Court finds that § 1325(b)(3) serves a compelling governmental interest by the least restrictive means.   A uniform system of bankruptcy serves a compelling governmental interest.  "[T]he government's significant interests in maintaining an equitable system for protecting creditors, for permitting debtors to obtain a 'fresh start' from overwhelming debt, and in avoiding excessive entanglement with religious matters are compelling." *Newman,* 203 B.R. at 477.  "[T]he federal government's interest in maintaining the bankruptcy system is one of the highest order and must, therefore, be regarded as compelling." *Hodge,* 220 B.R. at 392.   The purpose of § 1325(b)(3) is to force debtors with above-median income to repay a greater portion of their unsecured debts.  Yet, it also ensures that debtors can maintain a lifestyle that affords them all necessary and reasonable expenses.  Thus the Court finds that the statute serves its intended purpose by the least restrictive means.  As noted by the District Court in *Newman,* "the effectiveness of the bankruptcy system could be frustrated if creditors' remedies were made subject to various exceptions based on the religious beliefs of debtors." *Newman,* 203 B.R. at 477-78.

Finally, while not specifically raised by the Debtors in their constitutional challenge, the Court also finds that § 1325(b)(3) does not violate the Establishment Clause of the First Amendment.   The Establishment Clause prohibits Congress from making laws respecting an establishment of religion.  U.S. Const. amend. I.   *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct.
12

2105, 29 L.Ed.2d 123 (1971), establishes the following three-part test for examining a statute to determine whether it violates the Establishment Clause of the First Amendment:

> First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion . . . ; finally, the statute must not foster 'an excessive government entanglement with religion.'
>
> *Lemon v. Kurtzman,* 403 U.S. at 612-13 (quoting *Walz v. Tax Commission,* 397 U.S. 664, 674, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970) internal citation omitted).

The statute at issue satisfies the *Lemon v. Kurtzman* test. Section 1325(b)(3) has a secular purpose: to force debtors who earn more than the median income to enter into a chapter 13 repayment plan that results in a greater recovery to unsecured creditors. It contains no language regarding religion or religious practices. It references other code sections, which in turn, restrict the types and amounts of many different expenses that can be deducted in calculating the debtor's disposable income. And while an incidental effect of § 1325(b)(3) may inhibit an above-median income debtor's ability to tithe as part of his or her religious practice, it does not prohibit tithing altogether. Its primary effect is to provide a greater recovery to unsecured creditors of above-median income debtors, and it targets all charitable contributions, whether to religious institutions or other charitable organizations. In short the statute properly "balance[s] the need to protect unsecured creditors with the debtor's potentially conflicting interest in disposing of property as he sees fit." *Newman,* 203 B.R. at 475 n.4, and at 477 (considering § 548(a)(2)). Finally, there is no excessive government entanglement with religion. The statute imposes no requirements whatsoever on the church, nor does it create any direct relationship between the government and the church. *Cf. Lemon v. Kurtzman,* 403 U.S. at 616 (wherein a state aid program which benefitted only parochial schools would give rise to an entangling church-state relationship impermissible under the First Amendment); *In re Gomes,* 219 B.R. 286,

13

296 (Bankr.D.Or. 1998) (finding that the recovery from churches of tithes under the fraudulent transfer statute does not create an excessive government entanglement "because it merely requires the payment of funds; it does not impinge directly on Church beliefs or ministries."). At most, § 1325(b)(3) has "the indirect and unintended effect of limiting the Church's budget" since debtors whose income falls above the median will not likely be able to continue tithing at pre-petition levels. *Gomes,* 219 B.R. at 296.

For the foregoing reasons, the Court concludes that § 1325(b)(3) precludes above-median income debtors from deducting charitable donations from their disposable income calculation and does not violate the Debtors' First Amendment Rights.

The Debtors' plan as is currently proposed does not pay all of the Debtors' disposable income to the Chapter 13 trustee and, therefore, cannot be confirmed. An order will be entered in accordance with this Memorandum Opinion.

                                                MARK B. McFEELEY
                                                United States Bankruptcy Judge

COPY TO:

Ronald E Holmes
Attorney for Debtors
112 Edith Blvd NE
Albuquerque, NM 87102-3524

Kelley L. Skehen
Chapter 13 Trustee
625 Silver Avenue SW
Albuquerque, NM 87102-3111

Alice Nystel Page
Office of the United States Trustee
PO Box 608
Albuquerque, NM 87103-0608

Melissa R. Perry
Executive Office for the United States Trustee
20 Massachusetts Ave., NW
Washington, DC 20530

14